UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DACIAN MASTER FUND, LP,                )
                                       )
                    Plaintiff,         )
                                       )
            v.                         )   No. 1:24-cv-01549-JPH-KMB
                                       )
JOSH WANDER,                           )
                                       )
                    Defendant.         )

**ORDER ON PLAINTIFF'S UNOPPOSED
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Dacian Master Fund, LP, alleges that Defendant Josh Wander breached a contract by failing to fulfill a $25 million guaranty obligation. Dacian has filed a motion for summary judgment.  Dkt. [80].  For the reasons below, that unopposed motion is **GRANTED in part** as to liability.

**I.
Facts and Background**

Because Dacian has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582. 584 (7th Cir. 2009) (citation omitted).  Here, Mr. Wander has not responded to the summary judgment motion, so the Court treats Dacian's supported factual assertions as uncontested.  *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b), (f).

1

During the time relevant to this case, Mr. Wander was Managing Partner of 777 Partners LLC. Dkt. 81-4 (Matthews Decl. Ex. C). On September 20, 2021, SILAC Insurance Company ("SILAC") extended $50 million in loans to Noble Financial Solutions ("Noble") for Noble to invest. *Id.*; dkt. 81-3 (Matthews Decl., Ex. B). The proceeds from the investment were to be used to purchase equity in 777 Partners. Dkt. 81-4. These loans were memorialized in a Loan and Security Agreement ("Loan Agreement"). Dkt. 81-3. Twenty-five million dollars came from SILAC's general account (the "SILAC Investment"), and $25 million came from SILAC's "ModCo" account. *Id.* at 39; dkt. 81-4 at 3.

The same day, Mr. Wander signed a Guaranty to "unconditionally guarantee the full and prompt payment when due of . . . all obligations, liabilities and indebtedness of [Noble] to [SILAC] . . . including the obligations evidenced by the Note." Dkt. 81-2 at 2, 5, 7 (Matthews Decl., Ex. A). The "Note" referred to the SILAC Investment's "original principal amount of $25,000,000." *Id.* at 5; dkt. 81-4 at 3 (Matthews Decl., Ex. C). Under the Guaranty terms, if Noble "default[ed] in payment of the Guaranty Obligations . . . [Mr. Wander] . . . shall pay the Guaranty Obligations." *Id.* at 3. SILAC was entitled to that payment from Mr. Wander without first pursuing repayment from Noble. *Id.* at 3.

Mr. Wander also "represent[ed] and warrant[ed] to Lender that . . . [he] is Solvent." Dkt. 81-2 at 4. "Solvent" meant, in part, that Mr. Wander "will be able pay [his] debts and liabilities . . . as such debts and liabilities become absolute and matured" and "will have sufficient capital with which to conduct

2

the business in which [Mr. Wander] is engaged as such businesses are conducted and are proposed to be conducted after the date hereof." *Id.* at 5.

Under the Loan Agreement, Noble agreed to pay all unpaid interest accrued on the loans on a quarterly basis. Dkt. 81-3 at 8, 13. Failure to timely pay the loans' accrued interest on a quarterly basis therefore qualifies as an "Event of Default." *See id.* at 29. Upon an Event of Default, the Loan Agreement provided that the outstanding principal can be declared due:

> Lenders, upon written notice to the Borrower, may declare the outstanding principal amount of an interest on the Loan and all other amounts due and owing . . . to be due and payable without other notice to the Borrower . . . whereupon the full unpaid amount of the Loan and any and all other Obligations . . . shall bear interest at the Default Rate and shall be and become immediately due and payable.

*Id.* at 30.

In January 2023, SILAC sent a letter notifying Noble of its failure to make the quarterly payment due on December 30, 2022. Dkt. 81-6 at 2 (Matthews Decl., Ex. E). SILAC sent another letter in July 2023, notifying Mr. Wander that "[i]f this situation is not remedied, SILAC is prepared to take legal action against . . . Mr. Wander personally." Dkt. 81-7 at 2 (Matthews Decl., Ex. F).

The Guaranty that Mr. Wander signed provided that it "shall inure to the benefit of all . . . assignees." Dkt. 81-2 at 5. In June 2024, SILAC assigned its rights and obligations under the Loan Agreement to Dacian, "including without limitation any guarantees, security or collateral issued pursuant thereto." *See* dkts. 81-8; 81-9 (Matthews Decl., Ex. G, Ex. H). Later that month, Dacian

3

sued Mr. Wander in Indiana state court to enforce the Guaranty, and Mr. Wander removed the case to this court.  Dkt. 1.  Dacian has filed a motion for summary judgment.  Dkt. 80.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Zerante*, 555 F.3d at 584 (citation omitted).  A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c); it need not "scour the record" for evidence that might be relevant.  *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

Mr. Wander has not responded to the summary judgment motion, and the deadline to do so has passed.  When a summary judgment motion is unopposed, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record.  S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify

disputed facts).  "Even where a non-movant fails to respond to a motion for summary judgment, the movant still ha[s] to show that summary judgment [is] proper given the undisputed facts."  *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

Indiana substantive law governs this case.  Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on issues of law.  *Mashallah, Inc. v. West Bend Mutual Insurance Co.*, 20 F.4th 311, 319 (7th Cir. 2021).  In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

### III.
### Analysis

Dacian argues that it is entitled to summary judgment because Mr. Wander breached an enforceable guaranty agreement, and Dacian suffered damages.  Dkt. 81 at 17.  Mr. Wander did not respond.

Under Indiana law, a guaranty is a "conditional promise to answer for a debt or default of another person, such that the guarantor promises to pay only if the debtor/borrower fails to pay."  *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016).  The interpretation of a guaranty is governed by contract law.  *Id.*  Thus, to succeed on a breach of guaranty claim, a plaintiff must prove (1) the existence of a guaranty contract, (2) breach of the guaranty, and (3) damages.  *See Shenmei Yuan v. Wells Fargo Bank, N.A.*, 162 N.E.3d 481, 486 (Ind. Ct. App. 2020).

### A. Valid guaranty contract

The elements of a valid contract in Indiana are offer, acceptance, consideration, and a manifestation of mutual assent. *See In re Paternity of M.F.*, 938 N.E.2d 1256, 1259 (Ind. Ct. App. 2010). When contracts are "entered into freely and voluntarily," they are generally enforceable. *Humphries v. Ables*, 789 N.E.2d 1025, 1036 (Ind. Ct. App. 2003). An enforceable guaranty contract must be in writing and signed by the party against whom the action is brought. *See* Ind. Code § 32-21-1-1(b)(2).

Here, the agreement is in writing and is signed by Mr. Wander, establishing offer, acceptance, and mutual assent. Dkt. 81-2 (Matthews Decl., Ex. A); *Stardust Ventures, LLC v. Roberts*, 65 N.E.3d 1122, 1127–28 (Ind. Ct. App. 2016) (signature indicates assent). The Guaranty is also dated September 20, 2021, the same date that the Loan Agreement was executed. *Id.*; dkt. 81-3 (Matthews Decl., Ex. B). When a guaranty is made "at the time of the principal contract," there is sufficient consideration. *Jackson v. Luellen Farms, Inc.*, 877 N.E.2d 848, 858–59 (Ind. Ct. App. 2007). Thus, no material facts are in dispute, and Dacian has established a valid guaranty contract.

The assignment of rights from SILAC to Dacian does not affect the contract's validity, because contract rights are freely assignable unless the parties have agreed otherwise. *See Kuntz v. EVI, LLC*, 999 N.E.2d 425, 429 n.5 (Ind. Ct. App. 2013). Here, the Guaranty itself contains an express provision that it "shall inure to the benefit of all . . . assignees." Dkt. 81-2 at 3, 5 (Matthews Decl., Ex. A).

6

### B. Breach

#### 1. Mr. Wander's failure to pay

"A party breaches a contract when it fails to perform all of the obligations that it has agreed to undertake."  *Breeding v. Kye's Inc.,* 831 N.E.2d 188, 191 (Ind. Ct. App. 2005).  Here, the terms of the Guaranty make Mr. Wander liable for the outstanding SILAC Investment in an "Event of Default."  Dkts. 81-2, 81-3, 81-4 (Matthews Decl., Exs. A, B, C).  The Loan Agreement defined Noble's failure to timely pay as an "Event of Default," dkt. 81-3 (Matthews Decl., Ex. B), and the designated evidence establishes that Noble and Mr. Wander were notified of the default.  Dkts. 81-6; 81-7; 81-15 (Matthews Decl., Exs. E, F, N).  Mr. Wander was thus on notice that his Guaranty Obligations were triggered, but he failed to pay.  Dkts. 81-2, 81-14 at 4, 81-15 at 5 (Matthews Decl., Exs. A, M, N).  Mr. Wander's failure to fulfill his obligation to pay therefore constitutes a breach of contract as a matter of law.

#### 2. Mr. Wander's failure to remain solvent

Dacian also requests summary judgment on breach for Mr. Wander's "fail[ure] to remain solvent until the loan was paid in full."  Dkt. 81 at 20–21.  Dacian argues that "the Court should draw an adverse inference" based on Mr. Wander's repeated refusal to answer questions related to his solvency, citing the advice of counsel and the Fifth Amendment.  Dkt. 81 at 16, 20–21.  While a court may draw an adverse inference in a civil case against a party who invokes the Fifth Amendment, additional evidence is needed to corroborate the adverse inference before it can establish liability.  *Thompson v. City of Chi.,* 722

F.3d 963, 976 (7th Cir. 2013). Here, that requires Dacian to designate additional evidence showing that Mr. Wander was not solvent, as that term is defined in the Guaranty, dkt. 81 at 12 ¶ 20, when the Guaranty required him to be, *see* dkt. 81 at 16 ¶¶ 32, 34.

Dacian briefly refers to Mr. Wander's discovery statements and conduct related to his solvency but does not provide evidentiary citations or legal support. *See id.*; dkt. 81 at 20–21. Instead, Dacian cites Mr. Wander's invocation of the Fifth Amendment during his deposition and its own statements that are not properly supported with citations to the evidentiary record. *E.g.* dkt. 81 at 16 ¶ 32 ("Further, Wander has not provided any evidence suggesting that he is solvent, as he is required to be under the Guaranty"). And Dacian's assertion that Mr. Wander accused Dacian of prejudicing him by "pursu[ing] an immediate return of its investment," after Mr. Wander was "deeply involved in another litigation," does not allow the Court to conclude that Mr. Wander admitted that he was "unable to pay his obligations as they become due." Dkt. 81 at 16, 20–21.

Discovery was ongoing when Dacian filed its motion for summary judgment, *see* dkt. 95; dkt. 97, so perhaps Dacian can cite evidence showing an entitlement to summary judgment on this alleged breach. But for now, the motion for summary judgment is denied without prejudice as to breach of the solvency provision.

### C. Damages

Finally, the designated evidence establishes that Dacian was damaged by the breach.  Noble breached the Loan Agreement that Mr. Wander guaranteed, leaving both principal from the SILAC Investment and interest payments outstanding.  Dkt. 81-15 at 3 (Matthews Decl., Ex. N).  Dacian was therefore damaged by Mr. Wander's failure to pay the Guaranty.

Dacian is entitled to summary judgment on liability for Mr. Wander's failure to pay the guaranty.

### V.
### Conclusion

Dacian's unopposed motion for summary judgment is **GRANTED** as to liability for failure to pay the guaranty and **DENIED without prejudice** as to liability for Mr. Wander's failure to remain solvent.  Dkt. [80].  Dacian **SHALL HAVE through August 18, 2026**, to renew its motion for summary judgment on liability for failure to remain solvent.  If Dacian does not do so, it **SHALL HAVE through August 18, 2026**, to file either a summary judgment motion on damages, including the evidence in support of its damages calculation, or a request for a damages hearing.   Mr. Wander shall have 14 days to file any response and Dacian shall then have 7 days to file any reply.

**SO ORDERED.**

Date: 7/8/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

9

Distribution:

JOSH WANDER
1300 Monad Terrace
Unit PHB
Miami Beach, FL 33139

All electronically registered counsel