UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DACIAN MASTER FUND, LP, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:24-cv-01549-JPH-KMB |
| JOSH WANDER, | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Dacian Master Fund, LP, filed this action alleging that Defendant Josh Wander breached a contract by failing to fulfill a $25 million guaranty obligation and failing to remain solvent. In July 2026, the Court granted Dacian's motion for summary judgment as to Mr. Wander's liability for failing to pay the guaranty but denied it without prejudice as to his failure to remain solvent. Dacian had through August 18, 2026, to either renew its motion on the solvency issue or to address the issue of damages (via summary judgment motion or request for a damages hearing). Dkt. 100 at 9.

Dacian has filed a motion for summary judgment on damages. Dkt. 101. Mr. Wander has filed a motion to stay proceedings, or alternatively, for an extension of time to respond in light of ongoing bankruptcy proceedings. Dkt. 103. For the following reasons, Dacian's motion for summary judgment is **GRANTED**, dkt. [101], and Mr. Wander's motion is **DENIED**, dkt. [103].

## I.
## Mr. Wander's Motion to Stay or Extend Deadlines

Mr. Wander first argues that this case should be stayed because, on August 9, 2026, 23 entities, including 777 Partners LLC, 600 Partners LLC, and 777 Asset Management LLC, filed Chapter 11 bankruptcy petitions. Dkt. 103 at 1–2. Mr. Wander claims that the Chapter 11 case is "directly connected to the transactions at issue here" because "[t]he loan underlying the Guaranty was extended to Noble Financial Solutions to purchase equity in debtor 777 Partners." Dkt. 103 at 2. Mr. Wander also claims that he executed the guaranty "in his capacity as Managing Partner of 777 Partners" and that Dacian is "identified as a noticed creditor constituency in the Chapter 11 cases." *Id.* He asserts that these facts warrant a stay for three reasons: (1) "[c]laims, records, and transactions" concerning damages are now property of the debtors' estates in the bankruptcy action, which inhibits Mr. Wander from responding, (2) "[a] judgment on damages entered here before the claims process in the Chapter 11 Cases takes shape risks double recovery," and (3) Mr. Wander has indemnification and expense-advancement rights against 777 Partners, so any judgment in this action would "fall in part upon a Chapter 11 estate." *Id.* at 3–4. Dacian asserts that these arguments do not provide a basis for a stay, and it would be harmed by further delay. Dkt. 105.

777 Partners LLC, 600 Partners LLC, and 777 Asset Management LLC have pending Chapter 11 bankruptcy petitions. *See In re Signal National LLC et al.*, No. 26-bk-90190-ELM11 (N.D. Tex.) (consolidated action); *In re 777 Partners LLC*, No. 26-bk-90193-ELM11 (N.D. Tex.); *In re 777 Asset Management LLC*, No. 26-bk-90192 (N.D. Tex.); *In re 600 Partners LLC*, No. 26-bk-90191-

ELM11 (N.D. Tex.); Fed. R. Evid. 201(b). As Mr. Wander acknowledges, these petitions do not prompt an automatic stay, as Mr. Wander is not a "debtor" in those actions. 11 U.S.C. § 362(a); dkt. 103 at 3. Still, a district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 707 (1997). The Court may consider "the prejudice or tactical disadvantage [of a stay] to the non-moving party; whether or not issues will be simplified by the decision in the other case; and whether or not a stay will reduce the burden of litigation on a party." *Johnson v. Navient Sols., Inc.*, 150 F. Supp. 3d 1005, 1007 (S.D. Ind. 2015).

Mr. Wander does not convincingly explain why these factors warrant a stay in this case. First, he asserts that "[c]laims, records, and transactions" relevant to the question of damages are now part of the debtors' estates in the bankruptcy action, inhibiting his ability to respond. Dkt. 103 at 2–3. But Mr. Wander guaranteed the SILAC Investment in his individual capacity, and Dacian brought this action against him in his individual capacity. *See* dkt. 1; dkt. 81-2 at 2, 5, 7 (Matthews Decl., Ex. A); dkt. 105 at 2–3. So, though Mr. Wander asserts that he "executed the Guaranty in his capacity as Managing Partner of 777 Partners LLC," the 777 entities' bankruptcy petitions are irrelevant to the damages Dacian incurred from Mr. Wander's failure to fulfill his guaranty obligation. Second, Mr. Wander claims that a judgment in this Court risks allowing a double recovery for Dacian, but he cites no authority suggesting that that would occur. And finally, Mr. Wander argues that he has "indemnification and expense-advancement rights" against 777 Partners, so

"these overlapping obligations" warrant a stay. Dkt. 103 at 3–4. But he fails to explain how any such rights affect this Court's role or otherwise complicate this case such that a stay is warranted.

Mr. Wander also argues that he is "the primary defendant in a pending federal criminal prosecution . . . arising out of the same financing arrangements and business activities at issue in this action," which independently warrants a stay. Dkt. 103 at 2 (citing *United States v. Wander*, No. 1:25-cr-473-JPO (S.D.N.Y.)). When considering whether to stay a civil action due to parallel criminal proceedings, a court may consider: "(1) whether the civil and criminal proceedings involve the same subject matter; (2) whether the government has initiated both proceedings; (3) the posture of the criminal proceeding; (4) the effect on the public interest of granting or denying a stay; (5) the interest of [the parties] in proceeding expeditiously, and the potential prejudice that [the parties] may suffer from a delay; and (6) the burden that any particular aspect of the civil case may impose on [the parties] if a stay is denied." *Barton v. Galella*, No. 2:21-CV-00319-JRS-MG, 2023 WL 3436102, at *1 (S.D. Ind. May 12, 2023). Mr. Wander argues that, here, there is substantial subject-matter overlap, the criminal proceeding is just starting, defending against both actions would be a burden, and his Fifth Amendment rights would be threatened without a stay. Dkt. 103 at 5. Dacian argues that no remaining question in this case implicates Mr. Wander's Fifth Amendment rights, and he has not shown a "clear sense of hardship or inequity" to warrant a stay. Dkt. 105 at 4–5, 6–7.

The superseding indictment in the criminal case alleges that Mr. Wander "made false and misleading representations and fabricated financial documents to inflate 777 Partners' financial performance, to exaggerate its assets, and to conceal the firm's unsanctioned use of loans and investments." No. 1:25-cr-473-JPO, dkt. 50 (S.D.N.Y. June 30, 2026). "As a result of the scheme," it further alleges, "[Mr. Wander] defrauded the firm's lenders and investors out of nearly $500 million." *Id.* The issue in this case, however, was more narrowly whether Mr. Wander was personally liable for failing to fulfill a contractual guarantor obligation. It did not relate to alleged misrepresentations, use or misuse of funds, or fraud. And to the extent that there is any overlap, this Court has already found Mr. Wander liable for breach of contract. He fails to explain how quantifying Dacian's damages—the only remaining phase of these proceedings—bears on his criminal proceeding. Mr. Wander points to the fact that Dacian sought an adverse inference from Mr. Wander's invocation of the Fifth Amendment in this case, but the relevance of this argument is unclear. No similar inference may be drawn in a criminal proceeding. *See Carter v. Kentucky*, 450 U.S. 288, 305 (1981).

Mr. Wander does not explain how his Fifth Amendment rights are otherwise threatened by the entry of a damages judgment in this case. *See* dkt. 105 at 4; *see Jones v. City of Indianapolis*, 216 F.R.D. 440, 451 (S.D. Ind. 2003) ("The ultimate question . . . is whether the court should exercise its discretion in order to avoid placing the defendant[] in the position of having to choose between risking a loss in their civil cases by invoking their Fifth

Amendment rights, or risking conviction in their criminal cases by waiving their Fifth Amendment rights and testifying in the civil proceedings."). *But see CMB Exp.*, LLC v. Atteberry, No. 4:13-cv-04051-SLD-JEH, 2014 WL 4099721, *4 (C.D. Ill. Aug. 20, 2014) ("It is not unconstitutional to force a litigant to choose between invoking the Fifth Amendment in a civil case, risking a loss there, and providing answers, risking subsequent criminal prosecution."). Liability has already been determined; Mr. Wander does not explain how the damages inquiry relates to his criminal liability. And though Mr. Wander claims that the "simultaneous demands" of his criminal and civil cases "impose an extraordinary practical burden," dkt. 100 at 5, his criminal trial date is nearly two months away.[1] No. 1:25-cr-473-JPO, dkt. 51 at 3. Moreover, the issue presented here is very narrow and capable of being resolved efficiently with minimal prejudice to Mr. Wander. By contrast, the potential prejudice to Dacian from a stay at this juncture—despite a finding of liability against Mr. Wander—and is readily apparent.

For these reasons, Mr. Wander's request for a stay in light of pending bankruptcy and criminal proceedings is **DENIED.**

Alternatively, Mr. Wander requests an extension of time to respond to Dacian's motion for summary judgment on damages. He states that he "is actively seeking to retain litigation counsel, and requires additional time to respond to any renewed summary judgment motion . . . in light of the

---

[1] There is a pending motion to continue the trial to January 2027. *See* No. 1:25-cr-473, dkt. 54.

intervening Chapter 11 cases." Dkt. 103 at 6. Dacian argues that Mr. Wander has had adequate time to secure counsel and is engaging in dilatory tactics. Dkt. 105 at 5–6.

As Mr. Wander acknowledged, the bankruptcy actions were filed just recently, and he's cited no impending deadlines or other specific reasons that those actions have inhibited his ability to timely respond to Dacian's motion in this case. Furthermore, Mr. Wander has had ample opportunity to engage counsel to represent him in this case, which has been pending since September 2024. Over nearly two years, multiple counsel have appeared for Mr. Wander in this case, only to later withdraw. *See, e.g.*, dkts. 2; 73; 98; *see also* dkt. 105 at 5–6. Mr. Wander has provided no explanation for why he has not retained new counsel since his previous counsel withdrew, nor has he provided a compelling reason for the Court to delay ruling on the narrow issue presented by Dacian's motion. Mr. Wander's motion for an extension of time to respond to Dacian's motion for summary judgment is therefore **DENIED.**

## II.
## Dacian's Motion for Summary Judgment on Damages

Dacian has moved for summary judgment on damages, arguing that it is entitled to $25 million, the amount of Mr. Wander's personal guaranty. Dkt. 102 at 4. Mr. Wander has not responded.

Because Dacian has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Here,

Mr. Dacian has not responded to the summary judgment motion, so the Court treats Dacian's supported factual assertions as uncontested. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b), (f).

As explained in the Court's prior order, in September 2021, SILAC Insurance Company ("SILAC") extended $50 million in loans to Noble Financial Solutions ("Noble"). Dkt. 81-4 (Matthews Decl. Ex. C). These loans were memorialized in a Loan and Security Agreement ("Loan Agreement"). Dkt. 81-3. Twenty-five million dollars came from SILAC's general account (the "SILAC Investment"), and $25 million came from SILAC's "ModCo" account. *Id.* at 39; dkt. 81-4 at 3. The same day, Mr. Wander entered a guaranty whereby he "unconditionally guarantee[d] the full and prompt payment when due of . . . all obligations, liabilities and indebtedness of [Noble] to [SILAC] . . . including the obligations evidenced by the Note." Dkt. 81-2 at 2, 5, 7 (Matthews Decl., Ex. A). The "Note" referred to the "original principal amount of $25,000,000." *Id.* at 5; dkt. 81-4 at 3 (Matthews Decl., Ex. C). Under the guaranty terms, if Noble "default[ed] in payment of the Guaranty Obligations . . . [Mr. Wander] . . . shall pay the Guaranty Obligations." Dkt. 81-2 at 3.

In late 2022, Noble defaulted on the Loan Agreement, and SILAC notified Mr. Wander in July 2023 that it was "prepared to take legal action against . . . Mr. Wander personally . . . [i]f th[e] situation is not remedied." Dkts. 81-6 at 2; 81-7 at 2 (Matthews Decl., Ex. E, Ex. F). In June 2024, SILAC assigned its rights and obligations under the Loan Agreement to Dacian, "including without

limitation any guarantees, security or collateral issued pursuant thereto." *See* dkts. 81-8; 81-9 (Matthews Decl., Ex. G, Ex. H).

By January 2024, the SILAC Investment principal balance remained outstanding. Dkt. 81-15 at 3 (Matthews Decl., Ex. N).[2] Since that time, "Dacian has not received a single payment . . . and the entire [original] principal amount remains outstanding ($50 million).[3] This includes the $25 million principal amount that Mr. Wander guaranteed." Dkt. 102-1 at 2 (Kitz Decl. at 2 ¶ 7).

Dacian sued Mr. Wander in Indiana state court in June 2024 to enforce the guaranty, and Mr. Wander removed the case to this Court. Dkt. 1. In July 2026, the Court granted summary judgment for Dacian on the issue of liability for Mr. Wander's failure to pay the guaranty obligation. Dkt. 100. Dacian has now moved for summary judgment on damages. Dkt. 101.

"In a breach of contract action [in Indiana], the measure of damages is the loss actually suffered by the breach." *Sisters of St. Francis Health Servs., Inc. v. EON Props., LLC*, 968 N.E.2d 305, 313 (Ind. Ct. App. 2012). Here, Dacian designated evidence that Mr. Wander's $25,000,000 guaranty obligation was triggered, yet the original loan principal remains outstanding.

---

[2] As Dacian noted earlier in this case, in September 2022, $5,000,000 of the SILAC Investment was assigned to SILAC's ModCo account. Dkt. 81-1 at 2 (Matthews Decl. at 2 ¶ 11). Exhibit N thus notes a $25,000,000 "original principal balance" and a $20,000,000 "current principal balance" for the SILAC Investment. Dkt. 81-15 at 3.

[3] Dacian has acknowledged that it was assigned SILAC's rights to $45 million of the original $50 million principal balance. *See* dkt. 81 at 15; dkt. 81-8; dkt. 81-9 (Matthews Decl., Ex. G, Ex. H).

Dkt. 81-15 at 3 (Matthews Decl., Ex. N); dkt. 102-1 at 2 (Kitz Decl. at 2 ¶ 7). Dacian therefore adequately established that it has suffered $25,000,000 in damages from Mr. Wander's failure to pay. Dacian's motion for summary judgment on damages is **GRANTED**. Dkt. [101].

## III.
## Conclusion

Mr. Wander's motion to stay proceedings, or alternatively, for an extension of time, is **DENIED**, dkt. [103]. Dacian's motion for summary judgment on damages is **GRANTED**, dkt. [101]. Final judgment in the amount of $25,000,000 shall issue by separate entry.

**SO ORDERED.**

Date: 8/24/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOSH WANDER
1300 Monad Terrace
Unit PHB
Miami Beach, FL 33139

All electronically registered counsel